UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

FREDDIE JOHNSON *aka*
FRANKIE JOHNSON,                               [NOT FOR PUBLICATION]

                      Plaintiff,                     **MEMORANDUM & ORDER**
                                                                                         15-CV-7343 (MKB)
                          v.

CHARLES HYNES, ESQ., KENNETH P.
THOMPSON, ESQ., Former and Current Kings
County District Attorneys, LYNN W.L. FAHEY,
ESQ., Appellate Advocates, and APRIL AGOSTINO,
Clerk of Court, Appellate Division Second Judicial
Department,

                          Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Freddie Johnson, also known as Frankie Johnson, proceeding *pro se* and currently incarcerated at Otisville Correctional Center, commenced the above-captioned action on December 7, 2015, in the Southern District of New York, pursuant to 42 U.S.C. § 1983.[1] Plaintiff asserts claims for violation of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. For the reasons discussed below, Plaintiff's claims are dismissed.

**I. Background**

On January 26, 2011, Plaintiff pled guilty to arson in the second degree before the New York State Supreme Court, Kings County. (Compl. 3, Docket Entry No 2.) Plaintiff was

---

[1] This action was transferred to the Eastern District of New York by Order dated December 18, 2015. (Docket Entry No. 4).

sentenced to a term of incarceration of ten years and five years of post-release supervision. (*Id*. at 4.) On February 24, 2012, Plaintiff filed an appeal from the judgment of conviction to the Appellate Division, Second Department, and filed an application to proceed *in forma pauperis*. (*Id*. at 5.) On or about April 24, 2012, the Appellate Division granted Plaintiff's application to proceed *in forma pauperis*, directed that Plaintiff be provided with transcripts of his criminal proceedings, and assigned attorney Lynn W.L. Fahey of Appellate Advocates to represent Plaintiff on direct appeal. (*Id.*) On or about July 19, 2013, Plaintiff filed a grievance against Fahey with the "Disciplinary Committee about her non-responsive services she rendered and her failure to expeditiously perfect [Plaintiff's] appeal or file an *Anders* brief to relieve her of her representing [P]laintiff and violating his constitutional rights." (*Id*. at 10.)

On January 19, 2015, Plaintiff filed a *pro se* writ of error *coram nobis* and a request for judicial intervention in the Appellate Division, arguing that his due process rights and his rights to effective appellate counsel had been violated. (*Id.* at 13.) On March 25, 2015, April Agostino, the Appellate Division Clerk of Court, notified Plaintiff that the Appellate Division had rejected the error *coram nobis* application because his direct appeal was still pending. (*Id.*) Plaintiff was further advised by Agostino that if he was dissatisfied with his assigned appellate counsel, he should make a motion to have his counsel relieved and replaced or proceed *pro se*. (*Id.* at 14.) Plaintiff's claims in the instant action appear to relate to Plaintiff's dissatisfaction with Fahey's appellate representation and Agostino's rejection of his error *coram nobis* application. Plaintiff seeks injunctive relief, money damages, attorneys' fees and costs. (*Id.* at 6, 13, 15.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Additionally, if the Court "determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411 (2d Cir. 2015) (A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it . . . ." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

### b. Claims against Fahey

Plaintiff alleges that Fahey improperly represented him on appeal, (Compl. 10), but because section 1983 imposes liability for constitutional violations caused by state actors, Plaintiff's lawyer, as a private person, is beyond the scope of liability, *see Filarsky v. Delia*, 566 U.S. ---, ---, 132 S.Ct. 1657, 1661 (2012) ("Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."); *Grogan v. Blooming Cove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) ("Because the United States Constitution regulates only the Government, not private parties, a litigant . . . who alleges that her constitutional rights have been violated must first establish that the challenged conduct constitutes state action." (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted))).

It is well established that court-appointed attorneys, including attorneys associated with a legal aid organization, do not act under color of state law when they perform traditional functions of counsel. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Sash v. Rosahn*, 450 F. App'x 42, 2011 WL 6091571, at *1 (2d Cir. 2011) ("[A] court appointed criminal defense attorney does not act under color of state law when representing a client" (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997))); *Garcia v. City of N.Y.*, No. 13-CV-4655, 2013 WL 153756, at *3 (E.D.N.Y. Jan. 14, 2013) (Legal Aid Society attorney was not acting under color of state law when he represented the plaintiff in criminal court); *Pecou v. Hirschfeld*, No. 07-CV-5449, 2008 WL

957919, at *2 (E.D.N.Y. Apr. 3, 2008) ("Court-appointed attorneys do not act under color of state law merely by virtue of their appointment." (citing *Polk Cty.*, 454 U.S. at 325)). Because Plaintiff has failed to plead any facts that would support a finding that Fahey was acting under color of state law at the time of the alleged civil rights violations, Plaintiff's claims against Fahey are dismissed. 28 U.S.C. § 1915(e)(2)(B).

### c. Claims against Hynes and Thompson

Plaintiff names former Kings County District Attorney Charles J. Hynes and current Kings County District Attorney Kenneth P. Thompson as Defendants but does not assert that they were personally involved in the alleged deprivation of Plaintiff's civil rights. A plaintiff "must demonstrate [each] defendant's direct or personal involvement" in the actions that are alleged to have caused the deprivation of the plaintiff's constitutional rights. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)); *Holmes v. Kelly*, No. 13-CV-3122, 2014 WL 3725844, at *2 (E.D.N.Y. July 25, 2014) (same). A plaintiff must also "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986); *Andino v. Fischer*, 698 F. Supp. 2d 362, 381 (E.D.N.Y. 2010). Here, Plaintiff names Hynes and Thompson in the caption of the Complaint but does not make any allegations against them in the body of the Complaint.

Plaintiff also alleges that he is suing Hynes and Thompson in their individual and official capacities. (Compl. 3.) However, Plaintiff's claims for monetary damages against Hynes and Thompson in their official capacities are barred by the Eleventh Amendment doctrine of sovereign immunity.[2] "As a general matter, states enjoy sovereign immunity from suit in federal

---

[2] Plaintiff's claims against Hynes and Thompson in their individual capacities rather than their official capacities may also be barred by absolute immunity. Where a district attorney is sued pursuant to section 1983 in his or her individual capacity, although Eleventh Amendment

5

court, even if the claim arises under federal law." *KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013) (first citing U.S. Const. amend. XI; and then citing *Alden v. Maine*, 527 U.S. 706, 727–28 (1999)). This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state," *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)), and "bars the award of money damages against state officials in their official capacities." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); s*ee also Amaker v. N.Y. State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (holding that a district attorney and an assistant district attorney "benefited from New York's Eleventh Amendment immunity against suit" because they were sued in their official capacities. (citing *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993))); *Ying Jing Gan*, 996 F.2d at 529 ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is

---

immunity does not attach, *see State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 137 (2d Cir. 2013), absolute immunity may attach to bar the suit, *see Amaker*, 435 F. App'x at 55 ("With respect to [the plaintiff's] individual-capacity claims against [the District Attorney and the Assistant District Attorney], the District Court correctly held that they were entitled to absolute prosecutorial immunity."). As the Supreme Court and the Second Circuit have repeatedly recognized, prosecutors performing duties related to their prosecutorial function are protected by absolute immunity. *See, e.g.*, *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case." (citations and internal quotation marks omitted)); *Warney v. Monroe Cty.*, 587 F.3d 113, 120–21 (2d Cir. 2009); *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) (holding that a prosecutor acting "within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983" (internal citation and quotation marks omitted)); *see also Victory v. Pataki*, 814 F.3d 47, 66 (2d Cir. 2016) ("[T]he court must conduct 'some factual inquiry' to determine if the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity"); *Santulli v. Russello*, 519 F. App'x 706, 711 (2d. Cir. 2013) ("It is well settled that a prosecutor is entitled to absolute immunity for acts undertaken pursuant to her traditional function as an advocate in the prosecutorial process."). Because Plaintiff has not made any allegations against Hynes and Thompson as to their personal involvement, the Court cannot determine whether their

entitled to invoke the Eleventh Amendment immunity belonging to the state."). Because Plaintiff has not made any allegations against Hynes and Thompson, and because Hynes and Thompson are immune from suit in their official capacities, Plaintiff's claims against Hynes and Thompson are dismissed. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

### d. Claims against Agostino

Based upon the facts alleged by Plaintiff, Agostino acted pursuant to the court's judicial authority, and Plaintiff's claims against Agostino are therefore barred by absolute immunity. Court clerks are granted absolute immunity where they carry out judicial orders or perform acts integral to the judicial process. *See Ceparano v. Southampton Justice Court*, 404 F. App'x 537, 539-40 (2d Cir. 2011) (holding that court clerk was granted same immunity as judge "for performance of tasks which are judicial in nature and an integral part of the judicial process" (quoting *Rodriguez*, 116 F.3d at 66)); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) ("[C]ourts have granted absolute immunity to court clerks where they were performing discretionary acts of a judicial nature." (collecting cases)); *see also Filarsky*, 132 S.Ct. at 1663–64 (noting that "[g]overnment actors involved in adjudicative activities" have historically been protected by absolute immunity). Although a court clerk may not be entitled to absolute immunity for purely ministerial acts, the ambit of judicial function applies broadly to encompass such tasks as scheduling appeals and storing exhibits. *See Peker v. Steglich*, 324 F. App'x 38, 40 (2d Cir. 2009) (holding that court clerks sued for negligence in folding, filing and storing exhibits were performing tasks "basic and integral to the judicial function, namely the processing of an appeal"); *Rodriguez*, 116 F.3d at 66 (holding that court clerks were entitled to immunity for harms arising from delay in scheduling appeal).

---

actions would be barred by absolute immunity.

Here, Plaintiff claims that Agostino violated his civil rights when she notified Plaintiff that the Appellate Division had rejected Plaintiff's petition for a writ of error *coram nobis* because his appeal was pending. (Compl. 14.) Agostino was performing a task that was "judicial in nature," *Rodriguez*, 116 F.3d at 66, and Plaintiff's claim is therefore barred by absolute immunity.

III. **Conclusion**

Accordingly, Plaintiff's claims are dismissed. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B). Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to file an amended complaint if Plaintiff believes there is a basis to pursue his claim. Any amended complaint must be captioned "Amended Complaint" and must bear the same docket number as that of this Memorandum and Order. Any amended complaint will replace the Complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 269 U.S. 438, 444-45 (1962).

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: May 31, 2016
      Brooklyn, New York